IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MATTHEW DUNN,

Plaintiff,

3:11-CV-346-PK

v.

FINDINGS AND RECOMMENDATION

HOOPER, ENGLUND & WEIL, LLP,

Defendant.

PAPAK, Magistrate Judge:

Plaintiff (and counter defendant) Matthew Dunn filed this Fair Debt Collection Practices Act ("FDCPA") action against defendant (and counter claimant) Hooper, Englund & Weil, LLP ("Hooper"), on March 21, 2011. Hooper, a debt collector, was at material times attempting to collect a debt from Dunn. Dunn brings a single claim against Hooper under the FDCPA arising out of Hooper's conduct in mailing certain documents directly to Dunn rather than to Dunn's counsel, after Dunn advised Hooper that he was represented by counsel. Hooper counterclaims for its attorney fees. This court has jurisdiction over Richardson's action pursuant to 28 U.S.C. § 1331.

Now before the court is Hooper's motion (#10) for partial summary judgment (styled as a

motion for summary judgment) as to Dunn's claim against it only. I have considered the the motion, oral argument on behalf of the parties, and all of the pleadings on file. For the reasons set forth below, Hooper's motion should be denied.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is not proper if material factual issues exist for trial. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 318, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied,* 116 S.Ct. 1261 (1996). In evaluating a motion for summary judgment, the district courts of the United States must draw all reasonable inferences in favor of the nonmoving party, and may neither make credibility determinations nor perform any weighing of the evidence. *See, e.g., Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554-55 (1990); *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000).

## FACTUAL BACKGROUND[1]

On or before December 19, 2000, plaintiff Dunn incurred an obligation to third-party Ford Motor Credit Company in the amount of $7,563.73. On November 7, 2001, the Multnomah County Circuit Court issued a default judgment against Dunn in Ford Motor Credit Company's favor in the amount of (i) $7,563.73, plus pre-judgment interest from December 19, 2000,

---

[1] Except where otherwise indicated, the following recitation constitutes my construal of the evidentiary record in light of the legal standard governing motions for summary judgment under Federal Civil Procedure Rule 56.

through November 7, 2001 at the annual rate of 25.75%, (ii) costs and attorney fees in the amount of $745, and (iii) post-judgment interest at the annual rate of 28.75% on both foregoing amounts, from November 7, 2001, until paid. It appears that Dunn has never satisfied any portion of the judgment issued against him by the Multnomah County court. It further appears that the right to enforce and/or collect on the judgment against Dunn was assigned to defendant Hooper in or before early 2010. Hooper began making efforts to collect on the judgment shortly thereafter.

On or around June 18, 2010, Dunn spoke to an employee of Hooper by telephone, informing the employee that Dunn was represented by counsel, providing the contact information of his counsel, and requesting that all further communications from Hooper be directed to his counsel. On or around June 29, 2010, notwithstanding Dunn's advice to Hooper that he was represented by counsel, Hooper sent directly to Dunn (rather than to his counsel) a packet of documents including one or more writs of garnishment in connection with the Ford Motor Credit company judgment of November 7, 2001, an original debt calculation form, a notice of exemption form, and a challenge to garnishment form for each writ of garnishment.

Dunn filed this action on March 21, 2011, alleging Hooper's liability under the FDCPA for communicating directly with a consumer in connection with the collection of a debt while knowing that the consumer was represented by counsel, in violation of 15 U.S.C. § 1692c(a)(2).

On July 21, 2010, Dunn filed a petition for Chapter 7 bankruptcy, listing his claim against Hooper among the assets of his estate. On July 22, 2010, Kenneth S. Eiler, the trustee of Dunn's bankruptcy estate, filed a notice of intent to abandon the estate's interest in Dunn's FDCPA claim against Hooper on the grounds that the claim is "burdensome" to the estate. The bankruptcy

court has since ruled that the trustee's abandonment of the estate's interest in the claim was proper. In consequence, the parties have stipulated that Dunn is the party with standing to bring his FDCPA claim against Hooper.

## ANALYSIS

The Federal Debt Collection Practices Act prohibits debt collectors from communicating with debtors they know to be represented by counsel, absent certain specified circumstances:

> Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt—
>
> * * *
>
> (2) if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer. . . .

15 U.S.C. § 1692c(a). For purposes of the FDCPA, '[t]he term 'communication' means the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2). "The term 'debt collector'" means, in relevant part:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. . . . The term does not include—
>
> * * *
>
> (D) any person while serving or attempting to serve legal process on any other person in connection with the judicial enforcement of any debt. . . .

15 U.S.C. § 1692a(6).

As provided in 15 U.S.C. § 1692k, violation of Section 1692c can result in the imposition of a damages award in favor of the person whose rights were violated in the amount of the affected person's actual damages, plus discretionary statutory damages in an amount not to exceed $1,000, plus the reasonable attorney fees incurred by the affected person in connection with obtaining the award. *See* 15 U.S.C. § 1692k(a). Notwithstanding the foregoing, *no* damages may be awarded in the event the debt collector establishes by a preponderance of the evidence that its violation was unintentional. *See* 15 U.S.C. § 1692k(c).

Here, the documents that Hooper sent directly to Dunn were one or more writs of garnishment in connection with the Ford Motor Credit company judgment of November 7, 2001, an original debt calculation form, a notice of exemption form, and a challenge to garnishment form for each writ of garnishment. Under Oregon's statutory scheme governing the execution of judgments, "garnishment is the procedure by which a creditor invokes the authority of a circuit court, justice court or municipal court to acquire garnishable property of a debtor that is in the possession, control or custody of a person other than the debtor." Or. Rev. Stat. 18.602. Oregon law expressly provides that "[g]arnishment may be used to acquire garnishable property for application against . . . [a] judgment requiring the payment of money that has been entered in the register of a circuit court . . . ." Or. Rev. Stat. 18.605(1). The writ may be issued by any member of the Oregon State Bar for the purpose of enforcing a circuit court's money judgment. *See* Or. Rev. Stat. 18.635(3)(a).

Oregon statutory law requires that, once a writ of garnishment issues and is delivered to a garnishee, the issuer must "mail or deliver" to the debtor whose property is to be garnished all of the documents that Hooper mailed to Dunn:

> (1) Following delivery of a writ of garnishment to a garnishee, the person who delivered the writ must mail or deliver promptly the following documents to the debtor whose property is being garnished by the writ:
>
> (a) A copy of the writ of garnishment.
>
> (b) The original of the debt calculation form.
>
> (c) A notice of exemptions form in substantially the form provided by ORS 18.845.
>
> (d) A challenge to garnishment form in substantially the form provided by ORS 18.850, with the names and addresses of the garnishor and garnishee entered by the garnishor.
>
> (2) A person serving a writ of garnishment may meet the requirements of subsection (1) of this section by mailing the documents to the address of the debtor that appears in the writ of garnishment. If an address for the debtor does not appear in the writ, the person serving the writ need not comply with subsection (1) of this section.

Or. Rev. Stat. 18.658.[2] Indeed, under Oregon law, "[a] writ of garnishment is valid only if the writ is delivered not more than 60 days after the writ is issued." Or. Rev. Stat. 18.609(1).

Hooper offers three arguments in support of the proposition that its mailing of Section 658(1) documents directly to Dunn could not as a matter of law have been in violation of Section 1692c. First, relying on the Section 1692a(6)(D) exclusion from the statutory definition of "debt collector" applicable to "any person while serving or attempting to serve legal process on any other person in connection with the judicial enforcement of any debt," Hooper argues that when it mailed the Section 658(1) documents it acted, not in its capacity as a debt collector, but rather as a person serving legal process. Hooper's argument is unpersuasive. While garnishment papers are undeniably prepared succedent to legal process, they are not themselves legal process, and

[2] As the parties have not offered into evidence the writ(s) of garnishment at issue here, it is not possible to determine whether Dunn's address appears in the writ(s).

mail or delivery of garnishment documents does not constitute legal service of those documents. Moreover, as the Second Circuit has observed:

> Congress intended to apply the [Section 1692a(6)(D)] exemption only to "process servers," and not to those who prepared the communication that was served on the consumer. The language of § 1692a(6)(D) extends the exemption to a person only "while serving or attempting to serve legal process." *See also* S. Rep. No. 95-382, at 3-4 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1697-98 ("The term debt collector is not intended to include . . . process servers."). By exempting from liability under the FDCPA those individuals whose involvement in a debt collection communication was limited to serving the communication on the consumer -- in effect, to being messengers -- Congress did not compromise the strength of the FDCPA's protections. To read Congress, instead, as having carved out a wholesale exemption for anyone who prepares a communication -- no matter how violative of the safeguards that the FDCPA affords debtors -- just because the communication is eventually served on the consumer as a prerequisite to beginning a court proceeding, would not only stretch the statutory language; it would also significantly impede the statute from remedying the "mischief" to which it was addressed.

*Romea v. Heiberger & Assocs.*, 163 F.3d 111, 117 (2nd Cir. 1998) (footnote omitted). The exclusion is therefore inapplicable here.

Second, Hooper argues that the Section 658(1) documents it mailed directly to Dunn were not a "communication" for purposes of the FDCPA. In support of this proposition, Hooper cites *McKnight v. Benitez & Benitez & Assocs.*, 176 F. Supp. 2d. 1301 (M.D. Fla. 2001), an opinion of the district court for the Middle District of Florida. The *McKnight* court ruled that *service* of a *pleading* on a consumer did not constitute an FDCPA "communication," *see McKnight*, 176 F. Supp. 2d. at 1304, relying in part on a non-binding Federal Trade Commission comment that the FTC "does not view a formal legal action to be a 'communication' in connection with the collection of a debt" and that "[t]he term communication does not include formal legal action (*e.g.*, filing of a lawsuit or other petition/pleadings with a court; service of a complaint or other

legal papers in connection with a lawsuit, or activities directly related to such service,)" *see id.* at 1305-1306. Assuming without deciding that the courts of the Ninth Circuit would concur in the *McKnight* court's holding and reasoning, Hooper's reliance on *McKnight* is, however, misplaced. Garnishment is a post-judgment collections procedure, and the writ of garnishment is not a pleading or other document prepared in connection with filing a formal legal action. Both *McKnight* and the FTC commentary on which it relied are inapposite here.

As noted above, '[t]he term 'communication' means the conveying of information regarding a debt directly or indirectly to any person through any medium" for FDCPA purposes. There can be no serious argument that the Section 658(1) documents Hooper sent to Dunn constituted or contained "information regarding a debt," or that sending the documents by mail was "a conveying" of them through a "medium." Hooper's conduct in mailing the documents to Dunn was therefore clearly within the statutory definition of a proscribed "communication." Moreover, the absence of any implicit exclusion from the statutory definition for litigation-related documents can be inferred from FDCPA provisions that presuppose that even pleadings are, *pace McKnight*, "communications" when they contain information regarding a debt. *See, e.g.*, 15 U.S.C. § 1692g(d) ("[a] communication in the form of a formal pleading in a civil action shall not be treated as an initial communication for purposes of subsection (a) [of Section 1692g, which governs the obligations of a debt collector in connection with its initial communication with a consumer regarding a debt of the consumer]." Finally, the great weight of authority to have addressed the question has affirmed that the litigation activity of debt collectors is subject to FDCPA regulation. *See, e.g., Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 229 (4th Cir. 2007) (the FDCPA "applies to law firms that constitute debt collectors, even where their debt-collecting

activity is litigation"). I therefore conclude that Hooper's conduct in mailing Section 658(1) documents to Dunn constituted a communication for purposes of Section 1692c(a).

Third, Hooper argues that, even if it was a debt collector engaging in communication with a consumer regarding the consumer's debt when it mailed Dunn the Section 658(1) documents, such communication was not actionable under Section 1692c(a) because it had "the express permission of a court of competent jurisdiction" to do so. *See* 15 U.S.C. § 1692c(a). Hooper's argument is that the Multnomah County Circuit Court's "express permission" to mail or deliver garnishment papers directly to Dunn rather than to Dunn through his counsel may be inferred from the fact that the Multnomah County court issued judgment against Dunn in connection with his subject debt and from the plain language of Section 658, which directs creditors seeking to garnish a debtor's property to "mail or deliver [garnishment papers] to the debtor," Or. Rev. Stat. 18.658(1). At least one court has adopted the position that Hooper advocates:

> [Plaintiff]'s claim that [the defendant law firm] violated the communication requirements of the FDCPA rests on shak[y] ground. The statute provides that a debt collector may not communicate directly with a consumer "if the debt collector knows the consumer is represented by an attorney with respect to such debt." 15 U.S.C. § 1692c(a)(2). However, the statute exempts communications made with "the express permission of a court of competent jurisdiction." *Id.* As [the defendant law firm] argue[s], Minnesota law requires service of an garnishment levy on the judgment debtor. Thus, the state court's default judgment was in effect that court's permission to follow the collection procedures outlined in Minnesota law, including service of the levy directly on the judgment debtor. If [plaintiff] wishes to challenge the correctness of the underlying default judgment, he may do so in that court but cannot bring such a challenge here without running afoul of the *Rooker-Feldman* doctrine. Assuming that [plaintiff] does not take issue with the underlying default judgment, he has failed to state a claim for a violation of the FDCPA's communication provisions.

*Resler, Resler v. Messerli & Kramer, P.A.*, Case No. 02-2510, 2003 U.S. Dist. LEXIS 1741, *11-12 (D. Minn. Jan. 23, 2003) (footnote omitted).

I am not unsympathetic to Hooper's argument. In the event that Section 658 were construed as requiring mail or delivery directly to the debtor, with the implication that mail or delivery of garnishment documents to the debtor's *attorney* rather than to the debtor would be out of compliance with the statute, strict compliance with Section 1692c would render compliance with Section 658 impossible where a represented debtor refused consent to receive a debt collector's communications. However, *pace Resler*, such a construal is simply not colorable in light of Section 1692c's provision permitting communication with a debtor following receipt of the "*express* permission of a court of competent jurisdiction" to do so. 15 U.S.C. § 1692c(a) (emphasis supplied). The *implicit* "permission" of the state legislature or, perhaps, of a court issuing a judgment, to mail garnishment documents directly to a debtor notwithstanding that debtor's representation by legal counsel might be inferable from Section 658, but Section 1692c does not authorize communication with a debtor on the basis of implicit permission. To the contrary, Section 1692a authorizes direct communication with a debtor known to be represented by counsel only on the basis of the debtor's consent or a competent court's *express* permission. I therefore reject Hooper's argument and the *Resler* court's holding.

Dunn, for his part, argues that, under Oregon Civil Procedure Rule 9, Hooper would have been required to "serve" the garnishment papers on his counsel regardless of the provisions of Section 1692c, and/or that, at minimum, Rule 9 authorizes "service" of Section 658(1) documents on his attorney. I note that Rule 9B provides that "[w]henever under the[ Oregon] [R]ules {of Civil Procedure] service is required or permitted to be made upon a party, and that party is represented by an attorney, the service shall be made upon the attorney unless otherwise ordered by the court." Or. R. Civ. P. 9B. However, as noted above, to "mail or deliver" a

document as contemplated in Section 658 is not the same as to effect formal service of a pleading or other legal process, and even if mail or delivery were construable as service, mail or delivery under Section 658 would in any event not constitute service under the Oregon Rules of Civil Procedure. I therefore conclude that Rule 9 is inapposite, and without bearing on the question whether mail or delivery to a debtor through the debtor's attorney could be compliant with Section 658.

Notwithstanding the foregoing, I agree with Dunn that Hooper could appropriately have resolved the apparent tension between Section 658 and Section 1692c by mailing or otherwise delivering the Section 658(1) documents to him through his attorney. In the event that Dunn's attorney refused to accept delivery on behalf of Dunn, so that, in effect, Hooper would have been instructed that no avenue of communication with Dunn was open to it, it would then have been authorized to deliever the Section 658(1) documents directly to Dunn under 15 U.S.C. § 1692c(c), which authorizes debt collectors notified that debtors no longer wish to receive communications from them to communicate with such debtors for the limited purpose of notifying them that a "specified remedy," in this case garnishment, is being invoked. 15 U.S.C. § 1692c(c)(3). Here, Hooper neither attempted the expedient of mailing or delivering the documents to Dunn through his attorney nor even inquired of Dunn's attorney whether he would accept delivery on Dunn's behalf, but rather sent the documents directly to Dunn, in technical violation of Section 1692c(a).

In its reply memorandum in support of its motion, Hooper for the first time advances the argument that Dunn's claim must be dismissed at summary judgment because Dunn has not met his burden to produce evidence establishing that Hooper was aware that Dunn was represented by

counsel at the time Hooper mailed the Section 658(1) documents to Dunn. However, because Hooper did not move against Dunn's claim on the ground that Dunn would be unable to meet that evidentiary burden, Dunn has not had an opportunity to make an evidentiary showing in opposition to the novel argument, and it is not properly before the court at this time. I therefore recommend that the court decline to enter summary judgment in Hooper's favor on this ground. Such recommended disposition should be without prejudice to Hooper's right to raise the issue in a subsequent dispositive motion, in the event Hooper believes in good faith that Dunn will be unable to meet his burden on this question if given the opportunity to do so.

Because Hooper has not established that Dunn cannot as a matter of law prevail on his claim, Hooper's motion should be denied.

## CONCLUSION

For the reasons set forth above, Hooper's motion (#10) for partial summary judgment (styled as a motion for summary judgment) should be denied.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a

///

///

///

///

copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this 4th day of November, 2011.

Honorable Paul Papak
United States Magistrate Judge